13 P.3d 68

2000-NMCA-100

Jimmie T. COOPER, Individually and as Trustee for the Jimmie T. Cooper and Betty P. Cooper Revocable Trust and Betty P. Cooper, Individually and as Trustee for the Jimmie T. Cooper and Betty P. Cooper Revocable Trust, Plaintiffs–Appellants,

v.

AMERADA HESS CORPORATION; Chevron U.S.A., Inc.; Dynegy Corporation f/k/a NGC Corporation, f/k/a Warren Petroleum Corporation; Concho Resources, Inc.; Primero Operating Co., Ltd.; Rhombus Operating Co., Ltd.; Rhombus Energy Co.; Arch Petroleum, Inc.; and Rice Engineering Corporation, Defendants–Appellees.

No. 20,412.

Court of Appeals of New Mexico.

Sept. 15, 2000.

Certiorari Granted, No. 26,609, Nov. 20, 2000.

J.E. Gallegos, Michael J. Condon, Gallegos Law Firm, P.C., Santa Fe, NM, Craig Lewis, Andrew Sher, Gallagher, Young, Lewis, Hampton & Downey, Houston, TX, Robert L. Love, Robert L. Love, P.C., Hobbs, NM, for Appellants.

Bradford C. Berge, Anthony F. Medeiros, Campbell, Carr, Berge & Sheridan, P.A., Santa Fe, NM, for Appellee Amerada Hess Corporation.

Sharon Sandle, Maddox Law Firm, Hobbs, NM, for Appellee Dynegy Corporation.

Phillip T. Brewer, Roswell, NM, for Appellee Primero Operating, Inc.

Thomas D. Haines, Jr., Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P., Roswell, NM, for Appellee Arch Petroleum, Inc.

Michael R. Comeau, Comeau, Maldegen, Templeman & Indall, L.L.P., Santa Fe, NM, for Appellee Rice Engineering, Inc.

Rod M. Schumacher, Barbara A. Reddy, Atwood, Malone, Turner & Sabin, P.A., Roswell, NM, for Appellee Chevron USA, Inc.

Gregory Burch, Liddell, Sapp, Zivley, Hill & LaBoon, L.L.P., Houston, TX, for Dynegy Corporation.

Don M. Fedric, Hunker–Fedric, P.A., Roswell, NM, for Appellees Rhombus Operating Co., Ltd. & Rhombus Energy Co.

Rick G. Strange, Cotton, Bledsoe, Tighe & Dawson, Midland, TX, for Appellee Concho Resources, Inc.

Frank McCallum, Midland, TX, for Appellee Rice Engineering, Inc.

## OPINION

ALARID, Judge.

{1}  This case requires us to decide where venue lies in a common-law environmental action involving multiple defendants. The trial court, believing that the action involved an interest in land located in Lea County, ruled that venue was improper in Santa Fe County and dismissed the entire case. As we explain more fully below, although Plaintiffs' claims arise out of alleged injury to real property, Plaintiffs' claims nevertheless are transitory claims for purposes of our general venue statute. Applying our general venue statute, we affirm in part, and reverse in part.

## BACKGROUND

{2}  The facts relevant to the issue of venue are straightforward and undisputed. Plaintiffs own and reside on the Monument Springs Ranch in Lea County. Plaintiffs allege that Defendants have engaged in, or are presently engaged in, oil and gas production, disposal, and transportation operations on the property. Plaintiffs allege that Defendants have spilled, leaked, and otherwise released hydrocarbons, salt water, and other substances dangerous to human life and wel-

fare onto portions of the property, and that Defendants' acts and omissions have facilitated migration of these substances through the surface and subsurface soils and into the underlying groundwater. Plaintiffs have asserted claims for negligence, trespass, nuisance, unjust enrichment, and infliction of emotional distress. Plaintiffs have requested money damages for the costs of investigating, assessing, and remedying the alleged pollution, or alternatively, an amount representing the diminished market value of Plaintiffs' property. Plaintiffs also requested injunctive relief, apparently to restrain Defendants from further tortious acts. Plaintiffs later moved to file an amended complaint omitting the request for injunctive relief. Plaintiffs' motion to amend was pending when the case was dismissed for improper venue.

{3} Defendants Amerada Hess Corporation (Amerada); Chevron, U.S.A., Inc. (Chevron); Dynegy Corporation (Dynegy); Concho Resources, Inc. (Concho); Rhombus Energy Co.(Rhombus Energy); Arch Petroleum, Inc. (Arch); and Rice Engineering, Inc. (Rice); are all foreign corporations. Defendant Rhombus Operating Co., Ltd. (Rhombus Operating) is a Texas limited partnership. Defendant Primero Operating Co., Ltd (Primero) is a New Mexico corporation, whose principal place of business is in Chaves County. Defendants Rhombus Energy and Rhombus Operating have appointed a Chaves County attorney as their registered agent for service. Defendants Amerada, Chevron, Dynegy, Concho, Arch, and Rice have designated either CT Corporation System, whose address is 123 East Marcy Street in Santa Fe, or Prentice Hall Corporation System, whose address is 121 E. Palace Avenue in Santa Fe, as their registered agents.

{4} Defendants[1] moved to dismiss for improper venue. The trial court dismissed the complaint without prejudice as to all Defendants based on the conclusion that the relief requested by Plaintiffs' complaint affected an interest in land within the meaning of NMSA 1978, § 38–3–1(D)(1), and that San-

ta Fe County therefore was an improper venue for an action affecting lands located in Lea County.

## DISCUSSION

### 1. STANDARD OF REVIEW

{5} A motion to dismiss for improper venue raises a question of law, which this Court reviews de novo. *See Williams v. Board of County Comm'rs of San Juan County*, 1998–NMCA–090, ¶ 28, 125 N.M. 445, 963 P.2d 522. "In determining venue, the court must look to the complaint and the character of the judgment [that] may be rendered." *United Nuclear Corp. v. Fort*, 102 N.M. 756, 760, 700 P.2d 1005, 1009 (Ct. App.1985).

### 2. DOES THIS LAWSUIT INVOLVE LANDS OR AN INTEREST IN LANDS?

{6} New Mexico's general venue statute is codified at NMSA 1978, § 38–3–1 (1876, as amended through 1988). The principal question presented by this appeal is whether Plaintiffs' claims involve an interest in lands within the meaning of Section 38–3–1(D)(1). That statute provides as follows: "When lands or any interest in lands are the object of any suit in whole or in part, the suit shall be brought in the county where the land or any portion of the land is situate."

{7} We begin our analysis by reviewing the historical background of Section 38–3–1(D)(1). *See Munroe v. Wall*, 66 N.M. 15, 18, 340 P.2d 1069, 1070 (1959) ("One guide in the construction of a statute that has been found to be most useful to the courts is the consideration of the history and prior condition of a particular law."). The first statute regulating venue in civil actions became effective on September 22, 1846, as part of the Kearny Code of Laws. *Geck v. Shepherd*, 1 N.M. 346 (1859). That statute, 1846 N.M. Laws, Practice at Law in Civil Suits, § 4 (Kearny Code), provided as follows:

Suits instituted by citation shall be brought in the county in which the defen-

---

**1.** For convenience, throughout we will refer to Defendants and Defendants' arguments collec- tively.

dant resides, or in the county in which the plaintiff resides, and the defendant may be found; in cases where the defendant is [not][2] a resident of this territory such suit may be commenced in any county.

{8} In 1851, the Territorial Legislature enacted a new venue statute. 1865 Rev. Stat and Laws, art. XII, ch. XXVII, § 7 (1851) (the 1851 Act). The 1851 Act provided as follows:

Every person shall be sued in the county in which he lives, except in the following cases, that is to say:

1st. A married woman when liable to be sued, shall be sued in the county in which her husband resides.

2d. When a defendant has inherited an estate concerning which any one may wish to institute a suit, he shall be sued in the county in which the estate is situated.

3d. When a defendant has contracted to perform an obligation in a particular county, he shall be sued in the county in which he has engaged to perform the contract.

4th. When the defendant has committed some crime for which a civil action for damages may be maintained, in such case he may be sued in the county in which the crime was committed, or wherever he may be found.

5th. In case the defendant may be a transient person, he may be sued in whatever county he may be found.

6th. When suit is brought for the recovery of moveable property, it shall be brought in whatever county the property may be found.

7th. In cases against guardians, curators, executors and administrators, the parties may be sued in the county in which any such persons were appointed to any of said trusts, in the county in which the property in controversy may be found, or in the county in which the defendant may live; it being optionary with the plaintiff.

8th. In cases of delinquencies or frauds in public officers, they may be sued in the county in which the fraud or delinquency occurred, or in which the defendant may be found.

9th. When lands are the object of the suit, it shall be brought in the county in which the lands are situated.

10th. When two or more persons [are] liable to be made defendants in the same suit, if it be in the nature of a transitory action, the suit may be brought in the county in which either of the proposed defendants may reside.

{9} In 1853, the Legislature repealed the 1851 Act, apparently because the ten exceptions had proved "oppressive" to defendants and of "doubtful expediency." *Geck,* 1 N.M. at 353. In place of the 1851 Act, the Legislature enacted the following venue statute:

All suits, instituted in any of the courts of this Territory, shall be brought in the county in which the defendant resides, or in the county in which the plaintiff resides, and the defendant may be found; and in case the defendant is not a resident of this Territory, such suit may be brought in any county.

1853 N.M. Laws, ch. XXIX, § 4 (the 1853 Act).

{10} In 1876, the Legislature enacted a new venue statute, 1875–76 N.M. Laws, ch. II. (1876) (the 1876 Act). The 1876 Act provided as follows:

Section 1. That all civil actions which may hereafter be commenced in the district courts, shall be brought and shall be commenced in counties as follows, and not otherwise:

First, All transitory actions shall be brought in the county where either the plaintiff or defendant, or some one of them, in case there be more than one of either, resides.

Second, Or in the county where the contract sued on was made or is to be performed, or where the cause of action originated or indebtedness sued on was incurred.

Kearny Code. *Geck,* 1 N.M. at 349.

---

**2.** The word "not" appears to have been inadvertently omitted from the English version of the

Third, Or in any county in which the defendant or either of them may be found in the Judicial District where the defendant resides....

Second, When the defendant has rendered himself liable to a civil action by any criminal act, suit may be instituted against such defendant in the county in which the offense was committed, or in which the defendant may be found or in the county where the plaintiff resides.

Third, When suit is brought for the recovery of personal property other than money, it may be brought as above provided, or in the county where the property may be found.

Fourth, When lands or any interest in lands are the object of any suit in whole or in part, such suit shall be brought in the county where the land or any portion thereof is situate.

Fifth, Suits for trespass on lands shall be brought as provided in the first section of this act, or in the county where the land or any portion thereof is situate.

Sixth, Suits may be brought against transient persons or non-residents in any county of this territory.

A comparison of Section 38–3–1 with the 1876 Act reveals that Section 38–3–1 is the direct descendant of the 1876 Act.

■ {11} Common-law courts traditionally maintained a distinction between "transitory" and "local" actions. *See Mostyn v. Fabrigas*, 98 Eng. Rep. 1021 (K.B.1774); *Livingston v. Jefferson*, 15 F. Cas. 660 (C.C.D.Va.1811) (No. 8,411); *see generally* 17 Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo, Sol Schreiber & Jerold S. Solovy, Moore's Federal Practice §§ 110.20, 110 App.104 (3d ed.) (Moore's); 77 Am.Jur.2d *Venue* § 2 (1997).

A cause of action was transitory if the transaction on which it was founded might have taken place anywhere; an action was local if the transaction could have happened only in a particular place. When transitory in nature, the action could be brought wherever the defendant could be found and jurisdiction over his person obtained. On the other hand, if the action

was local in nature, it could only be brought where the cause of action arose. 77 Am.Jur.2d *Venue* § 2; *see also Livingston*, 15 F. Cas. at 664. At common law, both suits to recover real property and suits to recover damages for injury to real property were deemed local in character. *See generally* XXII William M. McKinney, Encyclopedia of Pleading and Practice, *Venue* § II.b. (1902) (McKinney); 77 Am.Jur.2d *Venue* § 18. It is clear that Plaintiffs' claims for nuisance and trespass would have been treated as local claims under the common law. McKinney, § II.b., at 777–78.

■ {12} The common-law treatment of tort actions for injuries to land as local claims appears to have been as much a matter of tradition as of logic. For example, even though an action for damages for trespass to real property was considered local, actions for specific performance of a contract to sell real property or for breach of a lease of real property were considered transitory actions, which could be brought in any court with jurisdiction over the person of the defendant. McKinney, § II.b. text and notes at 783. In his celebrated opinion in *Livingston*, Chief Justice Marshall criticized the common-law rule as applied to trespass actions:

It is admitted, that on a contract respecting lands, an action is sustainable wherever the defendant may be found: yet, in such a case, every difficulty may occur which presents itself in an action of trespass. An investigation of title may become necessary. A question of boundary may arise, and a survey may be essential to the full merits of the cause: yet these difficulties have not prevailed against the jurisdiction of the court. They have been countervailed, and more than countervailed by the opposing consideration, that if the action be disallowed, the injured party may have a clear right without a remedy in a case where the person who has done the wrong, and who ought to make the compensation, is within the power of the court. That this consideration should lose its influence, where the action pursues a thing not within the reach of the court, is of inevitable necessity; but for the loss of its influence where the remedy is against the person

and can be afforded by the court, I have not yet discerned a reason, other than a technical one, which can satisfy my judgment.

*Livingston*, 15 F. Cas. at 664.

{13} Under the Kearny Code, there was no attempt to distinguish transitory and local actions as at common law; instead, in all actions, venue depended upon the residence of the parties.

{14} The 1851 Act appears to have codified a modified common-law approach. For example, the sixth exception limiting the venue of actions to recover moveable property to the county where the property is found, 1851 Act, § 7, ¶ 6, corresponds to the common-law characterization of replevin as a local action. *See* McKinney, § II.b. at 779. The ninth exception, applicable "[w]hen lands are the object of the suit" likewise is consistent with the common-law's characterization of suits to recover land as local actions. *See* McKinney, § II.b. at 777. It is less clear whether the Legislature intended the ninth exception to codify the common-law's characterization of suits to recover damages to real property as local.

{15} The 1853 Act reinstated the Kearney Code's approach to venue and once again abolished the common-law distinctions between transitory and local actions. The 1853 Act remained in effect for the next twenty-three years.

{16} The 1876 Act involved a substantial reworking of the general venue statute. The relationship of the 1876 Act to common-law venue rules is not entirely clear. Although the 1876 Act refers to "transitory actions," it does not employ the complementary common-law term "local actions." In the cases of trespass to land and recovery of moveable property, the 1876 Act is consistent with the common law in providing for venue to be laid in the county where the property is located, McKinney, § II.b. at 777–79, but the 1876 Act clearly departs from the common law in providing for venue in such actions to be laid in the alternative in the same manner as in transitory actions.

{17} In summary, our review of the predecessors to Section 38–3–1 satisfies us that New Mexico has never fully embraced the common-law transitory-local dichotomy. This conclusion is reinforced by a case interpreting the 1876 Act at a time when courts were thoroughly familiar with common-law pleading: *Jemez Land Co. v. Garcia*, 15 N.M. 316, 107 P. 683 (1910), *overruled on other grounds by Kalosha v. Novick*, 84 N.M. 502, 505 P.2d 845 (1973). In *Jemez Land Co.*, the plaintiff brought suit in the district court of Bernalillo County, alleging that the defendant had trespassed on land owned and possessed by plaintiff in Sandoval County by cutting many small growing trees and piling them into a brush fence around a sub-tract of land. The plaintiff further alleged that the defendant had threatened plaintiff's employees when they attempted to clear away the brush, which had created a fire hazard. The plaintiff sought one hundred dollars damages for the trees that had been cut and destroyed and a permanent injunction restraining defendant from further cutting of trees and from ever claiming any right, title or interest in plaintiff's land. The defendant answered, setting up as defenses: (1) his ownership of the sub-tract under color of an 1865 deed, and (2) improper venue.

{18} The trial court dismissed the action for improper venue (which at the time *Jemez Land Co.* was decided, was considered a jurisdictional defect, *see Kalosha*, 84 N.M. at 504, 505 P.2d at 847). On appeal, the plaintiff argued that the action was properly filed in Bernalillo County as a suit for trespass to land. *See* C.L. 1897, § 2950, ¶ 5 (1876) (now codified as NMSA 1978, § 38–3–1(E)). The defendant argued that the action involved "lands or any interest in lands" and therefore could only have been brought in Sandoval County. *See* C.L. 1897, § 2950, ¶ 4 (1876) (now codified as NMSA 1978, § 38–3–1(D)).

{19} The Supreme Court affirmed the dismissal, observing that plaintiff's position that venue was proper under the provision for suits alleging trespass to land "would, undoubtedly, be correct *if the claim for damages was the sole object of the suit.*" *Jemez Land Co.*, 15 N.M. at 321, 107 P. 683 (emphasis added). However, the Supreme Court emphasized that the complaint also included an equitable cause of action, and that if this

equitable claim for injunctive relief was granted, "the appellee would be perpetually restrained from asserting title or any interest whatever in or to the lands in dispute which he claims to be the absolute owner by deed." *Id.* at 322, 107 P. 683. The Supreme Court held that an interest in land was "necessarily involved" in the suit. *Id.*

{20} *Jemez Land Co.* establishes that a plaintiff may not evade a mandatory venue provision by artful pleading. In most common-law jurisdictions, an action for trespass *quare clausum fregit* was not a proper method for trying title to real estate. *See* 21 McKinney, *Trespass to Try Title* § I; 87 C.J.S. *Trespass* § 57 (1954) (trespass action not proper means for adjudicating title as between plaintiff and defendant). In a few jurisdictions, such as Texas, an action for trespass could be used to adjudicate title to real property as fully as could be done by an action to quiet title. *See* 21 McKinney, *Trespass to Try Title* § I. As noted by the Supreme Court in *Jemez Land Co.,* New Mexico was not among the jurisdictions recognizing trespass to try title as a form of action. *Jemez Land Co.,* 15 N.M. at 323, 107 P. 683.

{21} Although the plaintiff in *Jemez Land Co.* characterized its suit as a trespass action, the object of the plaintiff's lawsuit, as revealed by its claim for equitable relief, was not merely to recover damages for tortious interference with its property. Through its equitable claim the plaintiff clearly sought to pre-empt any assertion of title by the defendant under color of the 1865 deed. Looking to the substance of the relief requested by the plaintiff's equitable cause of action, which would have had the effect of settling title as between the plaintiff and defendant, the Supreme Court held that the plaintiff's complaint affected an interest in land within the meaning of the 1876 Act.

■ {22} *Jemez Land Co.* largely disposes of the argument that venue in the present case is limited to Lea County. Although the 1876 Act has been amended in the intervening decades, the basic structure of the 1876 Act has not been altered. *Jemez Land Co.*'s observation that a trespass action is not confined to the county where the property is located "if the claim for damages was the sole object of the suit" marks a clear departure from the common-law rule that actions seeking damages for injury to real property are local actions. *Jemez Land Co.* remains good law and is fully applicable to Section 38–3–1. *See Team Bank v. Meridian Oil Inc.,* 118 N.M. 147, 149, 879 P.2d 779, 781 (1994) (citing *Jemez Land Co.* for proposition that venue outside county where land located may be proper if claim for damages is sole object of suit).

{23} We note and reject Defendants' argument that Plaintiffs' request for injunctive relief converts this case into an action involving an interest in land. It was well-settled at the time of *Jemez Land Co.* that in appropriate cases an injunction might issue to restrain continuing trespasses and prevent irreparable harm to the plaintiff. *See, e.g., Kerlin v. West,* 4 N.J.Eq. 449 (N.J.Ch.1844); *see generally,* 75 Am.Jur.2d, *Trespass* § 113 (1991). The Supreme Court's observation in *Jemez Land Co.* that the plaintiff's trespass action would not have been confined to the county where the property is located "if the claim for damages was the sole object of the suit" was not intended to establish a damages-injunction dichotomy for venue purposes. Rather, the distinction the Supreme Court was making was between actions the object of which is to redress tortious injury to real property (whether through damages or injunctive relief) versus actions that adjudicate title to real property as between the parties. In this regard, we note that subsequent to *Jemez Land Co.,* the Supreme Court has stated that to come within Section 38–3–1(D), the suit must implicate title. *Team Bank,* 118 N.M. at 149, 879 P.2d at 781. In contrast to *Jemez Land Co.,* the pleadings in the present case do not put in issue title to the property on which the pollution allegedly has occurred.

{24} Defendants argue that an interest in lands is involved in the present case because judgment in Plaintiffs' favor will have the practical effect of limiting Defendants' use and enjoyment of their oil and gas rights inasmuch as Defendants must modify their prior manner of conducting oil and gas operations on Plaintiffs' land to avoid further

liability. *See* 75 Am.Jur.2d, *Trespass* § 114 (1991) (discussing remedies for continuing trespass). We have no doubt that the Legislature had the power to enact a venue statute under which the indirect effects a successful trespass or nuisance action has on a defendant-landowner's use and enjoyment of its property constitutes a suit affecting an interest in lands. *Jemez Land Co.* and *Team Bank* lead us to the conclusion that the Legislature rejected such an approach in enacting Section 38–3–1(D)(1).

{25} To summarize, the 1876 Act manifests a substantial departure from common-law rules of venue. Under the 1876 Act, as carried forward in Section 38–3–1, actions seeking damages or injunctive relief for tortious injury to land are transitory actions subject to the venue rules of Section 38–3–1(A). In the case of trespass, the Legislature has included the county in which the land is located as an additional alternative venue.

{26} Plaintiffs were not required by Section 38–3–1(D)(1) to file their action in Lea County.

## 3. VENUE OF DEFENDANTS WHO ARE FOREIGN CORPORATIONS

{27} Plaintiffs argue that as to Defendants Amerada, Chevron, Dynegy, Concho, Arch, and Rice, who are foreign corporations, venue lies in Santa Fe County pursuant to Section 38–3–1(F) (1955). Plaintiffs rely on the fact that each of these Defendants has appointed a statutory agent with a Santa Fe County address. Defendants respond that their statutory agents, CT Corporation System and Prentice Hall Corporation System, are themselves foreign corporations, and that under the holding of *Aetna Finance Co. v. Gutierrez*, 96 N.M. 538, 632 P.2d 1176 (1981), CT Corporation System and Prentice Hall Corporation System do not reside in New Mexico. Therefore, according to Defendants, their statutory agents do not reside in Santa Fe County or any other county within New Mexico.

{28} Section 38–3–1(F) provides both "a carrot and a stick." The "stick" is amenability of a foreign corporation to suit in any county, however inconvenient, in the absence of a statutory agent who resides in New Mexico. The "carrot" is the ability of the foreign corporation to avoid statewide amenability to suit by designating a statutory agent who resides in a given county.

{29} Two circumstances convince us that the Legislature did not contemplate the appointment of a foreign corporation as a statutory agent when it enacted Section 38–3–1(F). First, a statutory agent with a definable residence within New Mexico is central to the statutory scheme enacted by Section 38–3–1(F). The appointment of a foreign corporation as statutory agent frustrates the statutory scheme envisioned by the Legislature when it enacted Section 38–3–1(F) in 1955, because a foreign corporation is a non-resident, and, therefore, has no residence within New Mexico. *See Aetna Finance Co.*, 96 N.M. at 540–41, 632 P.2d at 1178–79 (citing *Seaboard Rice Milling Co. v. Chicago, Rock Island & Pacific Ry. Co.*, 270 U.S. 363, 46 S.Ct. 247, 70 L.Ed. 633 (1926); noting traditional general rule that a corporation is considered a resident only of its state of incorporation). Second, Section 38–3–1(F) was enacted on March 28, 1955, as part of 1955 N.M. Laws, ch. 258. As of that date, New Mexico law required that the statutory agent for a foreign corporation be "a domestic corporation or a natural person of full age actually resident in this state...." NMSA 1953, § 51–10–4 (1905, as amended through 1951). It was not until 1967, in the course of a general reworking of corporation law, that the Legislature provided that a domestic or foreign corporation's registered agent could be a foreign corporation. 1967 N.M. Laws, ch. 81, §§ 11, 110 (now codified as NMSA 1978, §§ 53–11–8, 53–17–9). Thus, as of the date of enactment of Section 38–3–1(F), New Mexico law did not provide for a foreign corporation to appoint another foreign corporation as its statutory agent.

{30} We recognize that in some circumstances we have found it feasible to harmonize apparent inconsistencies among statutes. *See Barela v. Midcon of New Mexico, Inc.*, 109 N.M. 360, 364, 785 P.2d 271, 275 (Ct.App.1989) (reading reference to AMA guidelines for evaluation of permanent im-

pairment contained in partial disability provision of Interim Workers' Compensation Act into related total disability provision). In *Barela*, we were satisfied that the Legislature intended to "establish certain benchmarks and to leave to the courts the task of 'rationalizing' the provisions of the statute." *Id.* Here, we find no clear basis for assuming that the Legislature intended to establish benchmarks, leaving it to the courts to harmonize any apparent gaps or inconsistencies between the 1967 amendments to corporation law and the general venue statute. Moreover, even if we were to attempt to put ourselves into the shoes of the 1967 Legislature, we would find ourselves facing not one, but several equally plausible alternative methods of coordinating the 1967 amendments of corporation law with the venue statute. Because venue has been regulated by statute, rather than by the common law, for over a century, we believe it was, and is, the Legislature's prerogative to harmonize the general venue statute with the 1967 changes in corporation law.

{31} Construing Subsection 38–3–1(F) consistent with what we have determined to be the original legislative intent, *see Hamby v. Gonzales*, 105 N.M. 778, 780, 737 P.2d 559, 560 (Ct.App.1987), we hold that a foreign corporation must appoint a domestic corporation or an individual actually residing in New Mexico in order to receive the benefit of the special venue provisions of Section 38–3–1(F). We therefore reject Plaintiffs' argument that the statutory agents of Defendants Amerada, Chevron, Dynegy, Concho, Arch and Rice reside in Santa Fe County within the meaning of Section 38–3–1(F). However, because these non-resident Defendants have failed to appoint a statutory agent who resides in New Mexico, they remain subject to suit in any county in New Mexico, including Santa Fe County.

### 4. DOES VENUE AS TO ONE DEFENDANT DETERMINE VENUE AS TO ALL?

{32} Citing *Teaver v. Miller*, 53 N.M. 345, 208 P.2d 156 (1949) and *Hamby*, 105

N.M. at 778, 737 P.2d at 559, Plaintiffs argue that if venue is proper in Santa Fe County as to any one defendant, then venue is proper as to all. We disagree with this reading of *Teaver* and *Hamby*. The actual holding of *Teaver* is that under Section 38–3–1(A) (codified at the time of *Teaver* as NMSA 1941, § 19–501(2)), the *residence* of one of the defendants determines venue as to the remaining defendants, assuming that the defendant whose residence determines venue is a necessary party. *Teaver*, 53 N.M. at 349, 208 P.2d at 160 (quoting 56 Am.Jur., *Venue*, § 30). *Teaver's* holding follows from the following language in Section 19–501(2): "[A]ll transitory actions shall be brought in the country where either the plaintiff or defendant or some one of them, in case there be more than one (1) of either, *resides*. ..." *Teaver*, 53 N.M. at 349, 208 P.2d at 159 (original emphasis deleted; emphasis added). We recognize that *Hamby* contains the statement that "the legislature provided that in the event there were multiple defendants, proper venue for one defendant would determine proper venue for all defendants." *Hamby*, 105 N.M. at 780, 737 P.2d at 561 (citing *Teaver*). However, when this statement is considered in context, it is apparent that this statement was simply a broad paraphrase of *Teaver* and does not mark an expansion of *Teaver's* express holding.

{33} Under *Aetna Finance Co.*, Defendants Amerada, Chevron, Dynegy, Concho, Arch, Rice and Rhombus Energy do not reside anywhere in New Mexico because they are foreign corporations. It is undisputed that neither Plaintiffs, nor the remaining Defendants, Rhombus Operating and Primero, are residents of Santa Fe County. *Teaver* is inapplicable because under these facts no party resides in Santa Fe County. Because *Teaver-Hamby* was the only basis urged by Plaintiffs to support venue in Santa Fe County as to Defendants Rhombus Energy, Rhombus Operating[3] and Primero, our conclusion that *Teaver* does not apply requires us to affirm the trial court's dismissal of these three Defendants.

**3.** Plaintiffs did not address the issue of how a foreign limited partnership such as Rhombus Operating should be treated for venue purposes. We express no opinion on the issue at this time.

## 5. DOES IMPROPER VENUE AS TO ONE OR MORE DEFENDANTS REQUIRE DISMISSAL AS TO ALL?

{34} Defendants, citing *Naumburg v. Cummins,* 98 N.M. 274, 648 P.2d 313 (1982), argue that improper venue requiring dismissal of one or more defendants requires the dismissal as to the remaining defendants. We disagree with this reading of *Naumburg.* In *Naumburg,* the plaintiff brought suit in Bernalillo County against the Cumminses, residents of Bernalillo County and Buena Vista Estates, a domestic corporation having its principal place of business in Bernalillo County. The relief requested by the plaintiff included rescission of a real estate contract for the purchase of land located in Santa Fe County and an injunction prohibiting the escrow agent from delivering the deed to the property to the defendants. The Cumminses moved to dismiss, citing Section 38–3–1(D). The trial court denied the motion and the Cumminses appealed. The Supreme Court held that the action involved an interest in land under Section 38–3–1(D) and reversed, dismissing the action as to all defendants, notwithstanding the fact that Buena Vista Estates had not objected to venue in Bernalillo County.

{35} *Naumburg* involved defendants whom the Supreme Court believed were "necessary and indispensable parties." *Id.* at 275, 648 P.2d at 314. We believe that *Naumburg* is best explained as a sua sponte application of the then-current, but subsequently rejected, principle that the absence of an indispensable party is a non-waivable, jurisdictional defect. *See C.E. Alexander & Sons, Inc. v. DEC Internat'l, Inc.,* 112 N.M. 89, 811 P.2d 899 (1991) (overruling prior cases holding that absence of indispensable party is jurisdictional defect). Under the then-prevailing view of indispensability, dismissal of the complaint as to the Cumminses required dismissal as to Buena Vista Estates due to a lack of jurisdiction in the district court of Bernalillo County. We decline to apply *Naumburg* outside its particular facts and its historical context.

## CONCLUSION

{36} We affirm in part and reverse in part. The trial court's order of dismissal is reversed as to Defendants Amerada, Chevron, Dynegy, Concho, Arch and Rice. The trial court's order of dismissal is affirmed as to Defendants Rhombus Energy, Rhombus Operating and Primero.

{37} **IT IS SO ORDERED.**

ARMIJO and ELLINGTON, JJ., concur.

13 P.3d 77