IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| BETTY AMPARANO and RAYMOND AMPARANO, a married couple, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | 2 CA-CV 2003-0162 DEPARTMENT A |
| | ) | O P I N I O N |
| Plaintiffs/Appellants/Cross-Appellees, | ) ) | |
| v. | ) ) | |
| ASARCO, INC., a New Jersey corporation, | ) ) ) | |
| Defendant/Appellee/Cross-Appellant. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20023364

Honorable Michael Alfred, Judge

AFFIRMED

Siegel, Bellovin & Karnas, P.C.
 By M. David Karnas                                              Tucson

    and

The Shanker Law Firm, P.L.C.
 By Howard M. Shanker                                           Tempe

    and

Thomas A. Zlaket, P.L.L.C.
  By Thomas A. Zlaket
                                                                    Tucson
                                          Attorneys for Plaintiffs/Appellants/
                                                            Cross-Appellees

Squire, Sanders & Dempsey, L.L.P.
  By Mitchel B. Axler and Brian M. McQuaid
                                                                   Phoenix
                                          Attorneys for Defendant/Appellee/
                                                            Cross-Appellant

H O W A R D, Judge.

**¶1**        The trial court dismissed appellants Betty and Raymond Amparanos'[1] putative class action against defendant ASARCO, Inc.,[2] after determining the action had been brought in an improper venue and could not be transferred to a proper venue. Concluding that venue is controlled by the mandatory venue provisions governing real property actions, we affirm the dismissal. In a cross-appeal, ASARCO challenges the trial court's denial of its motion to disqualify counsel. Because we conclude the trial court had a reasonable basis for denying ASARCO's motion, we affirm that ruling also.

### MOTION TO DISMISS FOR IMPROPER VENUE

---

[1]The amended complaint includes many named plaintiffs, all of whom we refer to as "the Amparanos."

[2]The complaint names as defendants ASARCO, Inc.; Americas Mining Group; Grupo Mexico S.A. de C.V.; Joseph Wilhelm; and John Shaw. We refer to all defendants as "ASARCO."

¶2 The parties do not dispute the facts alleged in the complaint or asserted in the motion concerning venue. In July 2002, the Amparanos sued ASARCO in Pima County, alleging ASARCO's mining and smelting operations had released significant amounts of pollutants and heavy metals into the environment, resulting in personal injury and property damage to the named plaintiffs who reside in Gila and Pinal Counties. ASARCO subsequently filed a number of motions to dismiss, including a motion to dismiss the complaint for improper venue pursuant to Rule 12(b)(3), Ariz. R. Civ. P., 16 A.R.S., Pt. 1. Finding that Arizona's venue statute required the lawsuit to be filed in the county where the real property is located and that no such county exists, the trial court granted ASARCO's motion and dismissed the Amparanos' complaint without prejudice. The Amparanos now appeal the dismissal.

¶3 The Amparanos first argue that the trial court erred in determining their action was brought in an improper venue and in dismissing their action. They contend that, because their claims are based on tort law, their action falls within the trespass exception to the venue statute. A.R.S. § 12-401(10). Interpretation of the venue statutes is a question of law that we review de novo. *See Republic Nat'l Bank of N.Y. v. Pima County*, 200 Ariz. 199, ¶ 10, 25 P.3d 1, 4 (App. 2001).

¶4 As a rule, venue generally lies in the county where a defendant resides unless the cause of action falls within one of the nineteen statutory exceptions listed in § 12-401.

3

*Brown v. Superior Court*, 2 Ariz. App. 434, 435, 409 P.2d 593, 594 (1966). In dispute in this case are subsections 10 and 12 of § 12-401, which provide in pertinent part:

> 10. When the foundation of the action is a crime, offense or trespass for which an action in damages may lie, the action may be brought in the county in which the crime, offense or trespass was committed or in the county in which the defendant or any of the several defendants reside or may be found . . . .
>
> . . . .
>
> 12. Actions for the recovery of real property, for damages thereto, for rents, profits, use and occupation thereof, for partition thereof, to quiet title thereto, to remove a cloud or incumbrance on the title thereto, to foreclose mortgages and other liens thereon, to prevent or stay waste or injuries thereto, and all other actions concerning real property, shall be brought in the county in which the real property or a part thereof is located.

The term "trespass" as used in § 12-401(10) encompasses any type of wrongful act that causes damage to another and is generally construed as being equivalent to a "tort." *Jackson v. Superior Court*, 23 Ariz. App. 361, 362, 533 P.2d 572, 573 (1975). In determining if an action falls within one of the exceptions, a court must determine the venue of the action "from the character of the complaint and from the character of the judgment which might be rendered upon a default thereto." *Santa Cruz Ranch v. Superior Court*, 76 Ariz. 19, 24, 258 P.2d 413, 416 (1953).

¶5 In their amended complaint, the Amparanos assert eight counts against ASARCO: 1) trespass, 2) private and public nuisance, 3) strict liability, 4) negligence and

4

negligence per se, 5) medical monitoring, 6) fraud and misrepresentation, 7) intentional infliction of emotional distress, and 8) negligent infliction of emotional distress. Each one of these eight claims is clearly based in tort. We therefore agree with the Amparanos that their action falls under the trespass exception of § 12-401(10).

¶6 Nevertheless, ASARCO argues that the Amparanos' tort claims also concern real property, thus directly implicating the real property exception of § 12-401(12). In response, the Amparanos contend that § 12-401(12) is limited to claims "involv[ing] an attempted recovery against the real property interests of the defendant" and that their claims do not involve such interests.

¶7 The language of the statute does not support Amparanos' interpretation. By including the words "damages thereto" and "to prevent or stay waste or injuries thereto, and all other actions concerning real property," the legislature intended to include in this venue exception actions other than those directed at a question of title or possession of real property. *See Diefenbach v. Holmberg*, 200 Ariz. 415, ¶ 8, 26 P.3d 1186, 1189 (App. 2001) (statute is to be given such effect that no clause, sentence or word is rendered superfluous, void, contradictory, or insignificant).

¶8 The complaint here alleges that ASARCO trespassed on the Amparanos' land, damaged it by means of a public nuisance, was negligent in doing so, and is strictly liable for the damage. The complaint also requests that two real property classes be established: one for property damage and one for property remediation. The complaint further requests

5

an injunction prohibiting further damage to the land. Because the Amparanos' action requests damages for the alleged contamination of the real property, remediation and monitoring of the property, and injunctive relief against future injuries to the real property, these claims clearly lie within the real property venue exception.

¶9 Because subsections 10 and 12 of § 12-401 both apply to the amended complaint under the facts of this case, the issue that we must resolve is which statutory exception takes precedence. In *Massengill v. Superior Court*, 3 Ariz. App. 588, 416 P.2d 1009 (1966), this court discussed an analogous situation of competing venue exceptions. In *Massengill*, a plaintiff was involved in an automobile accident in Yuma County. The plaintiff sued all the defendants in Maricopa County, including Yuma County and the sheriff and deputy sheriff of Yuma County. The Yuma County defendants moved for a change of venue to Yuma County based on § 12-401(15) and (16), which provide that counties and county officials "shall" be sued in their own county. But, because one of the individual defendants was served in Maricopa County, the plaintiff argued that venue was proper in Maricopa County under the trespass exception. The trial court granted the motion to change venue to Yuma County, and this court affirmed, holding:

> It is our opinion that where there are several alternative counties under which the "may" exception [of the venue statute] could be applicable, the plaintiff is in a position to exercise his option as to the proper county. . . . It is further our opinion that as between a "may" exception and a "shall" exception, the latter has the preference notwithstanding the broad language contained in Subsection 10.

6

*Massengill*, 3 Ariz. App. at 591, 416 P.2d at 1012; *see also Campbell v. Deddens*, 21 Ariz. App. 295, 297, 518 P.2d 1012, 1014 (1974) (plaintiff cannot circumvent venue statute by uniting in complaint a personal action with a local action).

¶10 Although *Massengill* was based on the policy underlying the county exception, we similarly conclude that the mandatory real estate exception should control even if the plaintiff also alleges separate causes of action that fall under the permissive trespass exception. At common law, actions involving real property were "local" in nature and were required to be filed in the county where the real property was located. *See Cooper v. Amerada Hess Corp.*, 13 P.3d 68, 72 (N.M. Ct. App. 2000). The legislature continued this requirement by using very broad terms in this exception, including within it any claim involving an interest in real estate, damages to real estate, or simply "concerning real property."

¶11 Although the reasoning behind the "local" rule is not clear, other courts have concluded that mandating venue in the county where the real estate is located is more convenient for witnesses and prevents more than one court from acting on title to real property. *See, e.g., Stauffer Chem. Co. v. Superior Court*, 71 Cal. Rptr. 202, 204 (Ct. App. 1968) ("Whatever its origin in history or custom, the venue rule governing actions for injury to real property usually promotes the convenience of the court, litigants and witnesses."); *Truck South, Inc. v. Patel*, 528 S.E.2d 424, 428 (S.C. 2000) ("Strong public policy supports a rule that requires an action for the specific performance of a land sales

7

contract to be litigated in the county where the land is located."). The legislature apparently adopted these or similar reasons in enacting § 12-401(12).

**¶12**        A common sense reading of the statute indicates that the mandatory real property exception should take precedence over the permissive trespass exception. First, the permissive trespass exceptions in § 12-401(10) are exceptions to the requirement that the plaintiff sue the defendant in the county of the defendant's residence. They are not exceptions to the mandatory language of the real estate exception. Second, to allow a permissive exception to overcome a mandatory provision would eviscerate § 12-401(12). Many disputes involving real property also involve mortgages, deeds of trust, other written liens, torts for encroachments on the land, or torts resulting in some physical damage to the land. Little would be left of § 12-401(12) if the courts allowed claims arising from a writing, § 12-401(5) and (6), or from a tort, § 12-401(10), to defeat its mandatory language. We conclude, therefore, that, when causes of action that may be brought in different counties under § 12-401(10) are combined with a cause of action "concerning real property," § 12-401(12), the proper venue is in the county where the real property is located.

**¶13**        The Amparanos next argue that, even if venue in this case is controlled by § 12-401(12), the trial court erred in dismissing the case rather than transferring it to the proper county under A.R.S. § 12-404. They claim that venue would have been proper in either Pinal or Gila County where "a part" of the real property is located. *See* § 12-401(12)

(action "shall be brought in the county in which the real property or a part thereof is located"). But, because the Amparanos did not raise this argument below, we will not reverse the trial court based on it and express no opinion on its validity. *See Hahn v. Pima County*, 200 Ariz. 167, ¶ 13, 24 P.3d 614, 619 (App. 2001) (failure to raise issue in trial court constitutes waiver of issue).

**¶14** The Amparanos next argue that, regardless of what statutory venue exception applies, ASARCO waived its right to challenge venue. The Amparanos contend that, because ASARCO did not first move to have the action transferred under § 12-404, it waived its ability to seek dismissal for lack of proper venue under Rule 12(b), Ariz. R. Civ. P. We review the interpretation of a rule or statute de novo. *Wersch v. Radnor/Landgrant–A Phoenix P'ship*, 192 Ariz. 99, 100-01, 961 P.2d 1047, 1048-49 (App. 1997).

**¶15** Rule 12(b)(3), Ariz. R. Civ. P., permits a party to move to dismiss a complaint for improper venue. Rule 12(b) further states in pertinent part: "The [improper venue] defense . . . may be made only if the action cannot be or could not have been transferred to the proper county pursuant to A.R.S. § 12-404." Section 12-404(A) provides:

> If an action is not brought in the proper county, the court shall nevertheless have jurisdiction and may . . . determine the action unless the defendant, before expiration of the time allowed to answer, files with the clerk of the court . . . an affidavit of the defendant . . . stating that the county in which

9

the action is brought is not the proper county and stating the county of the defendant's residence, and praying that the action be transferred to the proper county.

¶16 The Amparanos argue that ASARCO failed to file the requisite affidavit to transfer the action to the proper county as required by § 12-404(A) and, thus, that the trial court improperly dismissed the complaint under Rule 12, Ariz. R. Civ. P. But the statute and rule pertain to different situations and are mutually exclusive. Section 12-404 applies if the action is filed in a county in which venue is not proper, but venue would be proper in a different county. In contrast, Rule 12(b) is limited to those rare situations in which "the action cannot be or could not have been transferred to the proper county," *i.e.*, where no county would be the proper venue for the action as constituted. Accordingly, if an action is brought in a county without proper venue and cannot be transferred to the county which would be the proper venue pursuant to § 12-404, the trial court is required to dismiss the action under Rule 12(b).

¶17 In conclusion, § 12-401(12) provides that venue is proper only in the county where the real property is located. Because the named plaintiffs' real property is located in more than one county, there is no correct venue under § 12-401(12) for the Amparanos' action. Accordingly, as the case was argued below, ASARCO could not have complied with § 12-404 by requesting "that the action be transferred to the proper county." The trial court did not err in dismissing the complaint.

10

¶18      At oral argument, the Amparanos argued that this result would allow venue to trump jurisdiction. The superior courts retain jurisdiction; but, as in other actions concerning improper venue, the defendant can require the action to be brought in the county with proper venue. *See Massengill*, 3 Ariz. App. at 591, 416 P.2d at 1012. The Amparanos also contended that our supreme court premised the Arizona Rules of Civil Procedure on the Federal Rules of Civil Procedure, and the federal version of Rule 12(b)(3) was specifically designed to allow the federal district courts of limited jurisdiction to dismiss a case brought in an improper venue. Because Arizona's superior courts are courts of general jurisdiction, *see Hayes v. Continental Insurance Co.*, 178 Ariz. 264, 273, 872 P.2d 668, 677 (1994), the Amparanos argue that Rule 12(b)(3), Ariz. R. Civ. P., is a "vestige" of the federal rules and has never been applied in any reported case. They also argue that the legislature has circumvented this rule by providing statutory mechanisms to resolve other venue conflicts. *See, e.g,* A.R.S. § 12-401(7) (when multiple defendants reside in different counties, action may be brought in any of those counties); A.R.S. § 12-401(15) (actions against multiple counties may be brought in any one of the named counties). The Amparanos ask us to imply such a resolution here, arguing that, to do otherwise, would impair the ability to bring class actions and would contravene jurisprudential policies such as promoting judicial economy. Although we understand these concerns, we cannot disregard the supreme court's rule or the legislature's clear venue

mandate. Nor can we tell the superior court it erred in applying both to the present action. Any remedy must therefore come from either our supreme court or the legislature.

## MOTION TO DISQUALIFY COUNSEL

¶19 On cross-appeal, ASARCO challenges the trial court's denial of its motion to disqualify the Amparanos' counsel because of the lead counsel's previous attorney-client relationship with ASARCO.[3] We review a trial court's ruling on a motion to disqualify counsel for an abuse of discretion. *Smart Indus. Corp., Mfg. v. Superior Court*, 179 Ariz. 141, 145, 876 P.2d 1176, 1180 (App. 1994). We will not find an abuse of discretion if a reasonable basis exists for the trial court's ruling. *See In re Shano*, 177 Ariz. 550, 557, 869 P.2d 1203, 1210 (App. 1993).

¶20 The general facts as presented by ASARCO's affidavits and supporting memoranda are undisputed. In 1993, Howard Shanker became employed as an associate attorney at the law firm of Fennemore Craig, P.C. During his time there, Shanker worked in the firm's environmental and natural resources practice group and completed research projects for various partners within that group. Shanker left Fennemore Craig in 1995 and, three years later, began representing clients in this action against ASARCO. The action progressed and, in 2002, Tucson attorney David Karnas and his firm became co-counsel for

---

[3]Although we are affirming dismissal of the complaint, if ASARCO's claim has merit, it is entitled to an order barring Shanker from any further adverse representation.

the Amparanos. In addition, two Texas-based attorneys, Newton Schwartz and Seth Cortigene, also became co-counsel.

¶21 On April 1, 2003, counsel for ASARCO wrote to all of the Amparanos' counsel, requesting they withdraw because of Shanker's previous attorney-client relationship with ASARCO. The Amparanos' counsel refused this request, and ASARCO subsequently filed under seal a motion to disqualify the Amparanos' counsel for violating ERs 1.9 and 1.10, Ariz. R. Prof'l Conduct, Ariz. R. Sup. Ct. 42, 17A A.R.S. This motion contained several supporting documents, including Shanker's billing statements and affidavits from ASARCO's general counsel and the chairman of Fennemore Craig's environmental and natural resources practice group. The trial court denied the motion without explanation.

¶22 We begin our analysis by discussing the scope of the Rules of Professional Conduct as adopted by our supreme court in 1983 and recently amended in 2003. According to its present Preamble, the Rules of Professional Conduct are designed, in part, to provide a structure for regulating attorney conduct through disciplinary agencies, and "[f]ailure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process." Pmbl. ¶¶ 19-20, Ariz. R. Prof'l Conduct. But the Preamble also states that a violation of an ethical rule "does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation," and warns that "the purpose of the Rules can be subverted when they are invoked by opposing

13

parties as procedural weapons." Pmbl. ¶ 20, Ariz. R. Prof'l Conduct. Thus, the rules of professional responsibility are for ethical enforcement and are not designed to be used as a means to disqualify counsel. The courts have, of course, looked to the ethical rules for guidance on disqualification issues. *See Towne Dev. of Chandler, Inc. v. Superior Court*, 173 Ariz. 364, 368-69, 842 P.2d 1377, 1381-82 (App. 1992). Within this context, we review ASARCO's challenge to the trial court's refusal to disqualify Amparano's counsel pursuant to ERs 1.9 and 1.10, Ariz. R. Prof'l Conduct.

**¶23**        ASARCO first argues that the court abused its discretion by not disqualifying Shanker pursuant to ER 1.9. This rule, as it read when the trial court decided this issue,[4] provides in relevant part:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as ER 1.6 would permit with respect to a client or when information has become generally known.

ER 9, Ariz. R. Prof'l Conduct (1983).

---

[4]The trial court issued its decision prior to the December 2003 amendments to the Arizona Rules of Professional Conduct.

¶24 ASARCO argues that the Amparano case is substantially related to Shanker's former work. Although ASARCO argues that the court may presume a conflict exists, the burden is on the party moving to disqualify opposing counsel to show "sufficient reason" why the attorney should be disqualified. *Alexander v. Superior Court*, 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984). And, in the absence of any express findings and conclusions by the trial court, we will imply the necessary findings and conclusions, if supported by the record, to affirm the order. *Shano*, 177 Ariz. at 557-58, 869 P.2d at 1210-11.

¶25 ASARCO contends that Shanker "represented ASARCO in a wide range of matters related to the environmental effects of ASARCO's operations" during his tenure at Fennemore Craig. As evidence of this representation, ASARCO submitted affidavits from partners who had worked with Shanker at Fennemore Craig, attesting that he had worked on numerous projects relating to permitting, lobbying, and enforcement issues for ASARCO. According to the affidavits, Shanker had full access to the area where all of ASARCO's files are located, and Shanker used some of these files to conduct legal research and write memoranda on issues directly relating to ASARCO. In furtherance of its argument, ASARCO submitted billing statements for approximately 112 hours of Shanker's legal work that was apparently billed to ASARCO. ASARCO noted that a portion of these hours dealt with water quality issues, which ASARCO claims is the basis for part of the Amparanos' complaint.

15

¶26 Despite its allegation that Shanker was considerably involved in ASARCO's representation, ASARCO did not submit any of the actual work product on which it based this claim. And, although the court allowed the parties to submit evidence under seal, ASARCO has not provided any of the "information relating to the representation" that Shanker allegedly received or explained how he would use that information "to the disadvantage of the former client." ER 1.9(b), Ariz. R. Prof'l Conduct (1983). The only evidence ASARCO presented is in the form of vague billing statements supported by very generalized affidavits, stating that Shanker researched and wrote memoranda and that, at one point, one of these memoranda was incorporated into an opinion letter. The record thus fails to support ASARCO's claim that Shanker, a first-year associate, was "environmental counsel for ASARCO" or that he would have been aware of litigation strategy ASARCO's counsel might use.

¶27 Furthermore, the Amparanos' complaint is based in state tort law and focuses on toxicology and causation of damages to the Amparanos and their property and increased risk of illness from an alleged exposure to unchecked toxic air emissions. In contrast, Shanker's work at Fennmore Craig appears to have centered primarily on federal permitting and compliance matters, focusing on water-related issues such as wastewater disposal under the Clean Water Act and solid waste regulation pursuant to the Resource Conservation and Recovery Act. And, although ASARCO correctly notes that the Amparanos' complaint refers to water pollution by stating "copper tailings . . . dumped adjacent to the [Gila River]

16

result[ed] in tailings being washed down the river," ASARCO failed to demonstrate how this one reference in a 138-paragraph complaint would show this action was substantially related to Shanker's activities when he worked on ASARCO's matters.

¶28 Even though the trial court gave no explanation for denying ASARCO's motion, the court could have properly found that the matters on which Shanker had worked while at Fennemore Craig and the matters raised in the Amparano complaint were not "substantially related." *See* ER 1.9(a), Ariz. R. Prof'l Conduct (1983); *see also* Ariz. State Bar Comm. on Rules of Prof'l Conduct Ethics Op. 94-06 (1994) ("[S]ome factual nexus must exist between the two matters; *i.e.*, the matters *themselves* must be substantially interrelated."). Furthermore, the trial court could have found that Shanker's potential access to ASARCO's files was too speculative to constitute a substantial risk that confidential information would be reviewed. Accordingly, the trial court could have properly concluded that ASARCO had failed to carry its burden of substantiating its claim that some ASARCO matter on which Shanker worked at Fennemore Craig while he was an associate was substantially related to this present action.

¶29 ASARCO also argues that Shanker's current representation of the Amparanos creates an appearance of impropriety, relying on Canon 9 of the Model Code of Professional Responsibility. Although the appearance of impropriety is no longer a standard in the Arizona Rules of Professional Conduct, it remains "a part of conflict of interest" analysis for purposes of disqualifying an attorney. *Gomez v. Superior Court*, 149

17

Ariz. 223, 225-26, 717 P.2d 902, 904-05 (1986). However, the appearance of impropriety does not necessarily require disqualification in every case; rather, "[w]here the conflict is so remote that there is insufficient appearance of wrongdoing, disqualification is not required." *Id.* at 225, 717 P.2d at 904; *see also Sellers v. Superior Court*, 154 Ariz. 281, 289, 742 P.2d 292, 300 (App. 1987) (appearance of impropriety is "too slender a reed" upon which to rest disqualification of counsel). Accordingly, we conclude that any conflict in this case is too remote to raise an "appearance of impropriety" that would require Shanker's disqualification.

¶30        ASARCO next argues the trial court erred by not disqualifying Shanker's co-counsel pursuant to ER 1.10, Ariz. R. Prof'l Conduct. The 1983 version of this rule provides in relevant part: "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by ER 1.7, 1.8(c), or 2.2." ER 1.10(a), Ariz. R. Prof'l Conduct (1983). We will assume for the purpose of this opinion that this rule could apply to co-counsel. *See Funds of Funds, Ltd., v. Arthur Andersen & Co.*, 567 F.2d 225, 234-36 (2d Cir. 1977).

¶31        In applying the rule of imputed disqualification, the first inquiry is to determine whether the representation of the present client is substantially related to the representation of the former client; if it is, any confidences and secrets known by the former client's lawyer are imputed to the firm, and the firm is then vicariously disqualified.

18

*Rodriguez v. State*, 129 Ariz. 67, 72, 628 P.2d 950, 955 (1981). However, we have already determined that the court did not err in denying ASARCO's motion to disqualify Shanker. Thus, logic dictates that, if Shanker is not disqualified, there can be no imputed disqualification of the associated firm. *State ex rel. Romley v. Superior Court*, 184 Ariz. 223, 228, 908 P.2d 37, 42 (App. 1995). Accordingly, we need not continue our inquiry into this matter.

**¶32** Finally, ASARCO preemptively counters the Amparanos' argument that it waived the right to object to the ethical conflicts presented by Shanker and his co-counsel. ASARCO contends that it made the request for counsel to withdraw only four months after the first amended complaint was filed in January 2003. But the record shows ASARCO was aware of Shanker's association with the Amparanos several years before the amended complaint was filed. As early as 1998, ASARCO's local counsel, whom Shanker had met when he was at Fennemore Craig, contacted Shanker to discuss matters relating to ASARCO. That same year, Shanker met with ASARCO's local and national counsel to negotiate a tolling agreement to allow the Amparanos time to develop their claims in furtherance of settlement. And Shanker presented a settlement package to ASARCO in May 2000. Further, even if we accept ASARCO's general counsel's avowal that he did not know Shanker was representing the Amparanos until "some time following . . . February 2001," ASARCO has not explained why it waited until 2003 to first raise the disqualification issue.

19

¶33 By demonstrating these initial contacts, the Amparanos raised at least a prima facie case of waiver, and the burden of going forward with evidence shifted to ASARCO to show why it had not waived any conflict. *See Babe Invs. v. Ariz. Corp. Comm'n*, 189 Ariz. 147, 152, 939 P.2d 425, 430 (App. 1997); *Kiley v. Jennings, Strouss & Salmon*, 187 Ariz. 136, 139, 927 P.2d 796, 799 (App. 1996). It failed to do so. And, considering that Shanker had worked with and for these plaintiffs for five years before ASARCO first raised the issue of disqualification, the trial court could have readily concluded that ASARCO had waived any conflict or that disqualification would be an excessive penalty. *See Hrudka v. Hrudka*, 186 Ariz. 84, 90, 919 P.2d 179, 185 (App. 1995) (finding that disqualification would be excessive penalty after parties had actively litigated case for year and half before issue of disqualification was raised); *see also Foulke v. Knuck*, 162 Ariz. 517, 523, 784 P.2d 723, 729 (App. 1989) (disqualification may be avoided if hardship to new client far outweighs injustice to former client who requests disqualification).

## CONCLUSION

¶34 We hold that the mandatory real estate venue exception of A.R.S. § 12-401(12) has precedence over the permissive trespass exception of § 12-401(10), requiring dismissal of the Amparanos' action as constituted. And, because a reasonable basis exists for the trial court to have found that ASARCO had not met its burden of showing sufficient reason why Amparanos' counsel should be disqualified, the trial court did not abuse its

discretion in denying ASARCO's motion to disqualify counsel pursuant to ERs 1.9 and 1.10, Ariz. R. Prof'l Conduct (1983). We affirm.


_____

JOSEPH W. HOWARD, Judge

CONCURRING:


_____

J. WILLIAM BRAMMER, JR., Presiding Judge


_____

M. JAN FLÓREZ, Judge