2002-NMSC-020

49 P.3d 61

Jimmie T. COOPER, Individually and as Trustee for the Jimmie T. Cooper and Betty P. Cooper Revocable Trust and Betty P. Cooper, Individually and as Trustee for the Jimmie T. Cooper and Betty P. Cooper Revocable Trust, Plaintiffs–Respondents,

v.

CHEVRON U.S.A., INC., Amerada Hess Corporation, and Rice Engineering Corporation, Defendants–Petitioners.

Jimmie T. Cooper, Individually and as Trustee for the Jimmie T. Cooper and Betty P. Cooper Revocable Trust and Betty P. Cooper, Individually and as Trustee for the Jimmie T. Cooper and Betty P. Cooper Revocable Trust, Plaintiffs–Respondents,

v.

Arch Petroleum, Inc., and Rice Engineering Corporation, Defendants–Petitioners.

No. 26,609.

Supreme Court of New Mexico.

June 4, 2002.

Hinkle, Hensley, Shanor & Martin, L.L.P. Thomas D. Haines, Jr. Roswell, NM Holland & Hart, L.L.P., Campbell & Carr Bradford C. Berge Santa Fe, NM Atwood, Malone, Turner & Sabin, P.A. Rod M. Schumacher Barbara A. Patterson Roswell, NM for Petitioners.

Gallegos Law Firm, P.C. J.E. Gallegos Michael J. Condon Santa Fe, NM Gallagher, Young, Lewis, Hampton & Downey Craig Lewis Andrew Sher Houston, TX for Respondents.

## OPINION

FRANCHINI, Justice.

{1} Plaintiffs–Respondents ("Plaintiffs") brought an environmental action in Santa Fe County against a number of oil and gas companies. The complaint stated various claims stemming from Defendants–Petitioners' ("Defendants") alleged contamination of Plaintiffs' property. The trial court granted Defendants' motion to dismiss for improper venue. The Court of Appeals affirmed in part and reversed in part, holding that venue was proper in Santa Fe County against some, but not all Defendants. *Cooper v. Amerada Hess Corp.*, 2000–NMCA–100, ¶ 36, 129 N.M. 710, 13 P.3d 68. We granted certiorari to review the Court of Appeals' opinion. Defendants argue that the Court of Appeals erred in: (1) determining that this lawsuit did not involve an interest in land; (2) allowing venue against some of the foreign corporation Defendants in Santa Fe County; and (3) concluding that improper venue as to some of the Defendants did not require dismissal of all Defendants. We affirm in part and reverse in part. We hold: (1) this lawsuit did not involve an interest in land; (2) venue was proper in Santa Fe County against the Defendants who maintained statutory agents in Santa Fe County; and (3) because venue was proper in Santa Fe County as to some of the Defendants, it was proper as to all Defendants who are parties to this appeal.

## I. FACTS AND PROCEDURE

{2} Plaintiffs own and reside on the Monument Springs Ranch in Lea County, New Mexico. Defendants, along with a number of other companies, lease the rights to conduct oil and gas operations on the property. Plaintiffs allege that Defendants have released hazardous substances into surface and subsurface soils, strata and groundwater. Plaintiffs further allege that this contamination has caused property damage to the ranch and personal injuries to themselves.

{3} Plaintiffs filed suit in Santa Fe County, asserting claims for negligence, trespass, nuisance, unjust enrichment, and infliction of emotional distress against: (a) foreign corporations with statutory agents in Santa Fe County (Amerada Hess Corp.; Chevron, U.S.A., Inc.; Dynegy Corp.; Concho Resources, Inc.; Arch Petroleum, Inc.; and Rice Engineering, Inc.); (b) a foreign corporation (Rhombus Energy Co.) and a foreign partnership (Rhombus Operating Co., Ltd.) who share a statutory agent in Chaves County; and (c) a domestic corporation (Primero Operating Co., Ltd.). The District Court ruled that the complaint "affect[ed] an interest in lands" and therefore dismissed the claims against all Defendants on the grounds that Santa Fe County was an improper venue.

{4} The Court of Appeals reversed the trial court's determination that this lawsuit involved an interest in land. *Cooper*, 2000–NMCA–100, ¶¶ 23–25, 129 N.M. 710, 13 P.3d 68. Accordingly, NMSA 1978, § 38–3–1(D) (1988), which controls venue for causes of action that have land or an interest in land as their object, did not apply. *Id.* ¶ 26. With regard to the Defendants with statutory agents in Santa Fe County, the Court held that venue was proper in any New Mexico county, including Santa Fe County, pursuant to NMSA 1978, § 38–3–1(F) (1988). *Id.* ¶ 31. The Court of Appeals concluded that the trial court had erred in dismissing the action against these Defendants. *Id.* With regard to the other Defendants, however, the Court held that venue was not proper in Santa Fe County, and therefore affirmed the trial court's dismissal as to these Defendants. We granted certiorari in order to review the Court of Appeals' opinion.

## II. DISCUSSION

### A. Whether venue is proper in Santa Fe County.

{5} The motion to dismiss for improper venue raises a question of law which we review de novo. *Williams v. Bd. of County Comm'rs*, 1998–NMCA–090, ¶ 28, 125 N.M. 445, 963 P.2d 522. In the present case, we review de novo whether venue is proper in Santa Fe County. Whether a civil action may be filed in a particular county depends on a series of considerations enumerated by NMSA 1978, § 38–3–1 (1988). Among other provisions, Section 38–3–1(D) mandates that if the object of an action is land or an interest in land, then the action must be commenced in the county where the land is situated. In contrast, proper venue for a transitory action depends on the residence of the defendant. If the defendant is a New Mexico resident, then Section 38–3–1(A) requires that the lawsuit be filed in any county in which a party resides, where the contract or cause of action originated, or in any county where the defendant may be found within the judicial district where the defendant resides.

{6} If the defendant to a transitory action is a foreign corporation, then under Section 38–3–1(F) one final distinction applies. If the foreign corporation defendant does not have a registered statutory agent in New Mexico, then venue is proper in any New Mexico county. However, if the foreign corporation defendant "maintain[s] a statutory agent in this state upon whom service of process may be had" then venue is proper only in the county where a plaintiff resides, in the county where a contract at issue was made or is to be performed, in the county where the cause of action originated or indebtedness was incurred, or lastly, in the county where the statutory agent designated by the foreign corporation resides. *See* § 38–3–1(F).

### B. Whether the object of this action is "lands or an interest in lands" under Section 38–3–1(D).

{7} Under Section 38–3–1(D)(1), "[w]hen lands or any interest in lands are the object

of any suit in whole or in part, the suit shall be brought in the county where the land or any portion of the land is situate." Thus, if the object of Plaintiffs' lawsuit is lands or an interest in lands, then venue will only be proper in Lea County. If, on the other hand, the action is transitory, then Plaintiffs are free to choose venue in accordance with the remaining provisions of Section 38–3–1.

■ {8} Claims for damages do not have lands or interest in lands as their object. Accordingly, a lawsuit comprised exclusively of claims for damages need not be brought in the county where the land is situated. *Team Bank v. Meridian Oil Inc.*, 118 N.M. 147, 149, 879 P.2d 779, 781 (1994); *Jemez Land Co. v. Garcia*, 15 N.M. 316, 321, 107 P. 683, 685 (1910), *overruled on other grounds by Kalosha v. Novick*, 84 N.M. 502, 504, 505 P.2d 845, 847 (1973). In the present case, the Court of Appeals determined that Plaintiffs were requesting injunctive relief as well as damages. *Cooper*, 2000–NMCA–100, ¶ 2, 129 N.M. 710, 13 P.3d 68 ("Plaintiffs also requested injunctive relief, apparently to restrain Defendants from further tortious acts."). Accordingly, the Court questioned whether Plaintiffs' "request for injunctive relief converts this case into an action involving an interest in land." *Id.* ¶ 23. The Court reasoned that *Jemez Land Co.* created a dichotomy between actions to redress tortious injury to real property and actions to adjudicate title to real property. *Id.* Because the present action fell into the former category, the Court of Appeals concluded the object of the lawsuit was not lands or interest in lands within the meaning of Section 38–3–1(D)(1). *Id.*

■ {9} We do not agree with the Court of Appeals that Plaintiffs made a request for injunctive relief. The conclusion of Plaintiffs' complaint requests that the trial court grant judgment against Defendants "for the injunctive relief set forth above." However, careful review of the complaint reveals that Plaintiffs never set forth a request for any injunctive relief. Indeed, even if the trial court had granted all forms of relief requested by Plaintiffs in the complaint, no injunction would have ensued. Because this case did not involve an actual claim for injunctive

relief, the Court of Appeals' analysis of whether injunctions constitute an interest in land was advisory, and it is hereby overruled. Although we disagree with the reasoning employed in the Court of Appeals' decision, the result that it reached was correct. Because the sole object of this suit is damages, Section 38–3–1(D)(1) does not apply to this action. *Jemez Land Co.* 15 N.M. at 321, 107 P. at 685. We therefore affirm the Court of Appeals' holding that "Plaintiffs were not required by Section 38–3–1(D)(1) to file their action in Lea County." *Cooper*, 2000–NMCA–100, ¶ 26, 129 N.M. 710, 13 P.3d 68.

■ {10} The dissent suggests that Plaintiffs' complaint made reference to a continuing nuisance and therefore adequately invoked injunctive relief. Dissent ¶ 37. With regard to the continuing nuisance claim, Plaintiffs' complaint only "seek[s] a recovery of the reasonable and necessary costs associated with restoring those portions of the Ranch that remain contaminated by the Defendants' operation, to their condition prior to that contamination occurring." Even though the complaint makes reference to a continuing nuisance, Plaintiffs' request for relief is clearly for monetary, not injunctive, relief. The dissent also argues that the trial court may impose injunctive relief for a continuing nuisance and therefore, for purposes of venue, Plaintiffs' continuing nuisance claim should not be restricted to a claim for monetary relief and should be "construed as implicating equitable relief in the form of abatement or injunction." Dissent ¶ 40. However, even if the trial court, in its discretion, decided to award injunctive relief sua sponte, this does not change "the object of [the] suit." Consequently, "the object of [the] suit" continues to be one for damages and therefore venue in the present case is not determined by Section 38–3–1(D)(1).

C. **Whether the county in which a foreign corporation's non-resident statutory agent maintains an office for receiving service of process provides proper venue under Section 38–3–1(F).**

{11} Under Section 38–3–1, when subsection (D) does not apply, proper venue de-

pends on whether the defendant is a resident of New Mexico. Section 38–3–1(F) allows a plaintiff to sue a foreign corporation defendant who is admitted to do business and who maintains a statutory agent in the county where the statutory agent resides. In this case, Plaintiffs are suing both resident and foreign Defendants. Because Plaintiffs filed suit in Santa Fe County pursuant to their interpretation of the venue rules pertaining to foreign corporations, we begin by addressing venue as it relates to these foreign corporations. The statutory agents serving the foreign corporation Defendants, namely CT Corporation System ("CT") and Prentice Hall Corporation System ("Prentice Hall"), are located in Santa Fe and are themselves foreign corporations. We now address whether the presence of these statutory agents in Santa Fe is sufficient to make Santa Fe the proper venue.

### 1. The Court of Appeals' Opinion

█ {12} In addressing this issue, the Court of Appeals relied on *Aetna Finance Co. v. Gutierrez*, 96 N.M. 538, 540–41, 632 P.2d 1176, 1178–79 (1981), which held that "foreign corporations are considered nonresidents of this state for the purpose of venue." *Cooper*, 2000–NMCA–100, ¶ 29, 129 N.M. 710, 13 P.3d 68. Based on this understanding of residence, the Court interpreted the Legislature's failure to "contemplate the appointment of a foreign corporation as a statutory agent when it enacted Section 38–3–1(F)" as intending to preclude non-residents from serving as statutory agents for venue purposes. *Id.* Accordingly, the Court held that "a foreign corporation must appoint a domestic corporation or an individual actually residing in New Mexico in order to receive the benefit of the special venue provisions of Section 38–3–1(F)." *Id.* ¶ 31. We disagree.

█ {13} The Court of Appeals failed to properly weigh NMSA 1978, § 53–17–9 (1967), which was enacted after Section 38–3–1, and which explicitly authorizes the appointment of a non-resident statutory agent. We presume that when the Legislature decided to unconditionally allow non-residents to serve as statutory agents, it was aware of existing law. *See State ex rel. Human Servs.*

*Dep't (In re Kira M.)*, 118 N.M. 563, 569, 883 P.2d 149, 155 (1994). Consequently, in light of the enactment of Section 53–17–9, foreign corporations that have appointed a foreign corporation as their statutory agent, may "receive the benefit of the special venue provisions of Section 38–3–1(F)." *Cooper*, 2000–NMCA–100, ¶ 31, 129 N.M. 710, 13 P.3d 68.

### 2. Whether CT and Prentice Hall "reside" in Santa Fe County for purposes of venue

{14} Section 38–3–1(F) provides that:

*suits against foreign corporations admitted to do business and which designate and maintain a statutory agent in this state upon whom service of process may be had shall only be brought* [ (1) ] *in the county where the plaintiff, or any one of them in case there is more than one, resides or* [ (2) ] *in the county where the contract sued on was made or is to be performed or* [ (3) ] *where the cause of action originated or indebtedness sued on was incurred or* [ (4) ] *in the county where the statutory agent designated by the foreign corporation resides.*

(Emphasis added.) In the present case, the parties do not dispute that the Defendants in question are foreign corporations admitted to do business in New Mexico. The issue at bar is whether Plaintiffs may place venue in Santa Fe County where the statutory agents designated by the foreign corporations reside, when the statutory agents themselves are non-residents.

█ {15} Resolution of this issue requires us to define "resides" as it applies to statutory agents who are foreign corporations under Section 38–3–1(F). Using our definition of "non-resident" from *Aetna Finance Co.*, Defendants claim that the statutory agents in the present case do not reside in New Mexico and that venue cannot, therefore, be placed where the statutory agent resides. Defendants argue that venue is proper only in Lea County where Plaintiffs reside and where the cause of action originated. Even though *Aetna Finance Co.* contains language in support of Defendants' position, it is distinguishable from the present case. In that case, the foreign corporation was suing a domestic de-

fendant. The plaintiff corporation had offices in Albuquerque and sought venue in Bernalillo County under Section 38–3–1(A). This Court looked to subsection (F) to determine whether Aetna "reside[d]" in Bernalillo County for venue purposes. We ultimately held that it did not. In so holding, this Court employed broad language that we today limit. In the present dispute, the foreign corporations are defendants and we therefore look not to subsection (A), but rather to subsection (F), to determine what venue is proper. To the extent that *Aetna Finance Co.* can be read to hold that foreign corporations can never "reside" in New Mexico for venue purposes under subsection (F), it is overruled.

{16} We next look to the language of Section 38–3–1(F) to determine if CT and Prentice Hall "reside" in Santa Fe for purposes of venue. The meaning of language used in a statute is a question of law that we review de novo. *State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). We give such language its ordinary and plain meaning unless the legislature indicates a different interpretation is necessary. *Draper v. Mountain States Mut. Cas. Co.,* 116 N.M. 775, 777, 867 P.2d 1157, 1159 (1994). According to Black's Law Dictionary, "[r]esidence usu[ally] just means bodily presence as an inhabitant in a given place [and a] person thus may have more than one residence at a time...." Black's Law Dictionary 1310 (7th ed.1999). Under this plain meaning of residence, CT and Prentice Hall "reside" in New Mexico by virtue of the offices they maintain in Santa Fe.

{17} We believe that the plain meaning of the term "resides" best effectuates the Legislature's intent in enacting Section 38–3–1. When the Legislature determined in 1955 that "suits against foreign corporations admitted to do business and which designate and maintain a statutory agent in this state upon whom service of process may be had shall only be brought ... in the county where the statutory agent designated by the foreign corporation resides," only resident New Mexicans could serve as statutory agents. Section 38–3–1(F); *Cooper,* 2000–NMCA–100, ¶ 29, 129 N.M. 710, 13 P.3d 68. Because all statutory agents resided in New Mexico, the term "resides" could have only been intended to locate the statutory agent and not to distinguish between resident statutory agents and non-resident statutory agents.

{18} Our rules of venue represent the Legislature's intent to ensure that the location of a trial is convenient for both parties to a lawsuit:

> Venue relates to the convenience of litigants, and reflect[s] equity or expediency in resolving disparate interests of parties to a lawsuit in the place of trial[.] In transitory actions the venue rules reflect an attempt to balance the common-law right of a defendant to be sued in his [or her] most convenient forum (usually the county of his [or her] residence) with the right of the plaintiff to choose the forum in which to sue.

*Team Bank,* 118 N.M. at 150, 879 P.2d at 782 (internal quotation marks and citations omitted). Thus, when a defendant resides in New Mexico, the plaintiff's right to choose the forum in which to sue is limited by Section 38–3–1(A) to those forums that the Legislature has determined will not unduly inconvenience the defendant. When the defendant does not reside in New Mexico and does not maintain a statutory agent in the state, however, Section 38–3–1(F) allows the plaintiff to place venue in any New Mexico county, presumably because all New Mexico counties will be inconvenient to a non-resident. We believe the Legislature passed Section 38–3–1(F) in order to "give foreign corporations that are admitted to do business and that have designated and maintained a statutory agent in this state the same 'weight' in the venue balance as resident defendants." *Team Bank,* 118 N.M. at 150, 879 P.2d at 782. We believe this intent is unaffected by the residence of a statutory agent.

{19} In the context of a statutory agent, we hold that the term "resides" has a plain meaning which we believe the Legislature intended. A statutory agent who maintains an office in New Mexico for the purpose of receiving service of process "resides" in New Mexico regardless of whether it is a

foreign corporation or a New Mexico resident. Accordingly, in the present case, venue was proper in Santa Fe County for the Defendants who maintained CT and Prentice Hall as their statutory agents in Santa Fe County.[1]

{20} Section 38–3–1(F) is silent on the issue of whether a properly joined defendant is subject to venue in the same county in which another defendant is subject to venue by virtue of the residence of a statutory agent. However, with regard to transitory actions, Section 38–3–1(A) demands that venue be brought, among other alternatives, "in the county where either the plaintiff or defendant, or any one of them in case there is more than one of either, resides." *See Teaver v. Miller*, 53 N.M. 345, 349, 208 P.2d 156, 160 (1949) ("[T]he residence of one of the defendants determines the venue of the action against all."). We can discern no basis for applying a separate rule to multiple defendants when venue is based on the residence of a statutory agent. The Court of Appeals' opinion determined that *Teaver* was inapplicable "because under these facts no party resides in Santa Fe County." *Cooper*, 2000–NMCA–100, ¶ 33, 129 N.M. 710, 13 P.3d 68. Because we conclude that when a foreign corporation appoints a foreign corporation statutory agent the residency requirement in Section 38–3–1(F) is met, *Teaver* is applicable. We therefore hold that venue in Santa Fe County is proper with regard to all Defendants still involved in the present case.[2]

## III. CONCLUSION

{21} The Court of Appeals' determination that the object of this lawsuit is not land or an interest in lands is affirmed. We also affirm, but for different reasons, the Court of Appeals' holding that venue in Santa Fe County was proper against Amerada Hess Corp.; Chevron, U.S.A., Inc.; Dynegy Corp.; Concho Resources, Inc.; Arch Petroleum, Inc.; and Rice Engineering, Inc. We hold that venue is proper in Santa Fe County for all Defendants still involved in this lawsuit.

{22} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER and PETRA JIMENEZ MAES, Justices.

PATRICIO M. SERNA, Chief Justice (dissenting)

JOSEPH F. BACA, Justice (dissenting)

SERNA, Chief Justice (dissenting).

{23} I respectfully dissent from Section II(B) of the majority opinion. The majority concludes that this case is not controlled by the venue provision relating to claims involving an interest in lands, Section 38–3–1(D)(1), because, under the majority's view, Plaintiffs seek only monetary damages. I am unable to agree with the majority's conclusion that "the sole object of this suit was damages," and I believe that the majority's narrow construction of Plaintiffs' complaint in order to reach this conclusion represents a significant departure from established rules of pleading in New Mexico. I believe that this change in pleading requirements places an unnecessary burden on plaintiffs in the drafting of complaints, takes an unwarranted step back to technical rules of pleading, and also unnecessarily restricts the power of trial courts to grant appropriate relief. Moreover, regardless of whether Plaintiffs' complaint invokes equitable relief in the present case, I believe that the Legislature intended to treat all private nuisance actions as local claims subject to the venue requirements in Section 38–3–1(D)(1). As a result, I believe that the district court correctly determined that venue was proper only in Lea County, and I would therefore affirm the district court's dismissal of Plaintiffs' complaint without prejudice. Based on my resolution of this issue, I would not reach the issue presented in Section II(C) of the majority opinion.

---

1. This does not prevent a foreign corporation from appointing a statutory agent in any other county in this state and making venue proper in that county.

2. Because the trial court dismissed all Defendants from the case for improper venue and the Court of Appeals affirmed the dismissal of Rhombus Energy Co.; Rhombus Operating Co., Ltd.; and Primero Operating Co., Ltd., these Defendants remain dismissed from the case since Plaintiffs did not appeal this issue.

## I. Section 38–3–1(D)(1) Applies to Nuisance Claims

{24} As explained below, I believe that Plaintiffs' complaint invokes injunctive relief. However, because this case involves a private nuisance claim, I believe the proper venue is controlled by Section 38–3–1(D)(1) regardless of whether it involves injunctive relief. I therefore respectfully disagree with the majority's interpretation of Section 38–3–1(D)(1).

{25} Section 38–3–1(D)(1) states: "When lands *or any interest in lands* are the object of any suit in whole *or in part,* the suit shall be brought in the county where the land or any portion of the land is situate." Section 38–3–1(D)(1) (emphasis added). It is difficult to imagine a broader statute relating to the proper venue for actions involving land. "[T]he plain language of the statute [is] the primary indicator of legislative intent." *Whitely v. N.M. State Pers. Bd.,* 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993). Thus, the first question in interpreting Section 38–3–1(D)(1) should be whether Plaintiffs' claim has as any part of its object any interest in land. Respectfully, I believe it is clear that it does.

{26} The primary basis of Plaintiffs' complaint is Defendants' pollution of their land, the resulting interference with their use and enjoyment of the land, and the diminution in the value of the property. Plaintiffs also seek to restrain Defendants' use of Defendants' real property in the form of oil and gas leases. *See Duvall v. Stone,* 54 N.M. 27, 32, 213 P.2d 212, 215 (1949) ("In this state a grant or reservation of the underlying oil and gas, or royalty rights provided for in a mineral lease as commonly used in this state, is a grant or reservation of real property."); *see also Heath v. Gray,* 58 N.M. 665, 669, 274 P.2d 620, 622 (1954) ("In New Mexico, the interest covered by an oil and gas lease is real property."), *overruled on other grounds by Kalosha v. Novick,* 84 N.M. 502, 504, 505 P.2d 845, 847 (1973). Plaintiffs' objective in this case is to vindicate and protect an interest in their land, the interest being their use and enjoyment of the land. *Scott,* 99 N.M. at 570, 661 P.2d at 62 ("A private nuisance is a civil wrong based upon a disturbance of

rights in land."); *cf.* N.Y. C.P.L.R. § 507 (McKinney 2001) ("The place of trial of an action in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property shall be in the county in which any part of the subject of the action is situated."). Plaintiffs could not seek recovery for the private nuisance without having an interest in the land in question. *See* Restatement (Second) of Torts § 821E (1979); *Stevensen v. Goodson,* 924 P.2d 339, 348 (Utah 1996) ("According to a majority of authorities, only possessors, owners, or occupiers of land may be impaired in their use and enjoyment of land and, therefore, recover for a nuisance."). Plaintiffs' private nuisance claim, then, has as its object an interest in land within the meaning of Section 38–3–1(D)(1). *See Clardy v. S & M Farms, Inc. (Ex parte Clardy),* 460 So.2d 1273, 1275 (Ala. 1984) (determining that, because "the nature of petitioners' complaint and of the relief sought is to protect petitioners' interest in the use and enjoyment of their land," "the subject matter of the . . . complaint, although not exclusively, is real estate" and thus "the proper venue for this action is the situs of the property in question"); *Johnson v. Compost Prods., Inc.,* 314 Ill.App.3d 231, 247 Ill.Dec. 175, 731 N.E.2d 948, 954 (2000) ("Generally, with respect to nuisance actions, an action to enjoin or abate a nuisance is local in nature and must be brought where the nuisance exists."); *cf. Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ.,* 115 N.M. 229, 238, 849 P.2d 372, 381 (Ct.App.1993) ("Water rights are real property rights that are generally tied to specific land. We thus conclude that under Section 38–3–1(D)(1), suits *involving* water rights must be brought in a county through which the stream or any portion of the stream flows." (emphasis added) (citations omitted)).

{27} Because Section 38–3–1(D)(1) expressly applies to "any interest in land" and requires only that the interest be an object of the claim "in part," I believe that the plain language of this provision clearly applies to Plaintiffs' claim. This plain language analysis is supported by both the context surrounding Section 38–3–1(D)(1) and its purpose. At common law,

[a]ctions for damages to real property, for nuisance, or for the obstruction of one's right of way were regarded as local and had to be brought where the cause of action arose; if brought elsewhere, they were subject to dismissal on demurrer. Actions for personal injury or injury to personal property and actions based on transactions, including for breach of contract, were regarded as transitory.

*Kane v. Schulmeyer*, 349 Md. 424, 708 A.2d 1038, 1042 (1998). Section 38–3–1(A) provides the venue requirements for "all transitory actions." I believe that, by using the phrase "transitory actions," the Legislature intended to adopt the common law's definition of transitory actions and also to incorporate the common law distinction between transitory and local claims except as explicitly modified. Because "transitory actions" did not include nuisance claims under the common law and because there is no specific exception to the local action venue rule for nuisance claims under Section 38–3–1, I believe that the Legislature's incorporation of the common law into Section 38–3–1(A) requires the application of the plain language of Section 38–3–1(D)(1) to the present case.

{28} In analyzing the relationship between Section 38–3–1 and the common law, the Court of Appeals, rather than noting the significance of the word "transitory" in Section 38–3–1(A), focused on the omission of the word "local" from Section 38–3–1(D). *Cooper*, 2000–NMCA–100, ¶ 16, 129 N.M. 710, 13 P.3d 68. The Court also noted that the common law rule had been criticized, and it quoted extensively from Chief Justice Marshall's opinion in *Livingston v. Jefferson*, 15 F. Cas. 660, 664 (C.C.D.Va.1811) (No. 8411), which reluctantly applied the local action rule to a trespass claim. *Cooper*, 129 N.M. 710, 13 P.3d 68, 2000 NMCA 100, ¶ 12, 129 N.M. 710, 13 P.3d 68. Finally, the Court of Appeals relied on this Court's opinion in *Jemez Land Co. v. Garcia*, 15 N.M. 316, 107 P. 683 (1910), *overruled on other grounds by Kalosha*, 84 N.M. at 504, 505 P.2d at 847, to conclude that this case does not involve an interest in land. I believe that the Court of Appeals failed to recognize the significance of the distinction between trespass and nui-

sance for purposes of interpreting Section 38–3–1.

{29} I agree with the Court of Appeals that "New Mexico has never fully embraced the common-law transitory-local dichotomy." *Cooper*, 2000–NMCA–100, ¶ 17, 129 N.M. 710, 13 P.3d 68. Specifically, New Mexico has departed from the common law's designation of an action for trespass seeking damages for unlawful entry upon land as a local action. Under Section 38–3–1(E), "[s]uits for trespass on land shall be brought as provided in Subsection A of this section [governing transitory actions] or in the county where the land or any portion of the land is situate." Because trespass actions were considered local under the common law, this provision represents a departure from the historical distinction between transitory and local actions and explains the Legislature's decision not to rely on the over-inclusive, from New Mexico's perspective, phrase of "local actions." The Legislature's decision to modify the common law rule regarding trespass, however, does not signal an intent to depart from the common law's treatment of *nuisance* actions. To the contrary, the broad wording of Section 38–3–1(D)(1) demonstrates that the Legislature did not intend to modify the local action venue rule except as provided in Section 38–3–1(E).

{30} Similarly, although the Court of Appeals believed that *Jemez Land Co.* "largely disposes" of the present case, this Court's analysis in *Jemez Land Co.* is fully explained by Section 38–3–1(E) governing trespass actions and is inapplicable to nuisance claims. In *Jemez Land Co.*, this Court discussed the relationship between the venue provisions for trespass actions and the venue provisions for actions having as part of their object any interest in land. 15 N.M. at 321, 107 P. at 684–85. The majority and the Court of Appeals highlight the statement in *Jemez Land Co.* that venue is not restricted to the county in which the land is situated "if the claim for damages was the sole object of the suit," 15 N.M. at 321, 107 P. at 684. However, I believe that this statement has been taken out of context. The "suit" at issue in *Jemez Land Co.* was a suit for trespass on land. This statement was specifically in response

to an argument that "the object of the suit is to recover damages *for a trespass on lands,*" and the Court concluded that "[t]he claim for damages *for trespass to land,* however, is not the sole object of the present action." *Jemez Land Co.,* 15 N.M. at 321, 107 P. at 684 (emphasis added). This discussion is thus confined to the relationship between the specific venue statutes for trespass actions and for actions having an interest in land as their object. The Court did not hold, as characterized by the majority, that *all* "[c]laims for damages do not have lands or interest in lands as their object." Majority opinion ¶ 8. Instead, this Court held that claims for damages *for trespass* are excluded from the venue rule now contained in Section 38–3–1(D)(1) because these actions are expressly governed by the venue rule now contained in Section 38–3–1(E). Thus, this Court concluded that the statutory exception to the local action rule for trespass actions is limited to claims for damages, and if a trespass action goes beyond a claim for damages, then it will be governed by the general venue rule for actions involving an interest in land. In other words, *Jemez Land Co.* limits the reach of Section 38–3–1(E). In doing so, contrary to the suggestion that it limited Section 38–3–1(D)(1), *Jemez Land Co.* actually recognized an expansive application of Section 38–3–1(D)(1) that includes certain trespass claims, specifically those that seek "protection of the realty" or that require a determination of "ownership and right of possession" between the two parties. *Jemez Land Co.,* 15 N.M. at 322, 107 P. at 685. Therefore, I do not believe that *Jemez Land Co.* supports the restrictive interpretation of Section 38–3–1(D)(1) advanced by the majority and the Court of Appeals. In fact, this Court has previously held that the "interest" covered by Section 38–3–1(D)(1) is not restricted to an interest in title. *See Heath,* 58 N.M. at 673, 274 P.2d at 625 (Compton, J., dissenting) (noting that the majority opinion rejected the notion that an "interest in lands" for purposes of venue was limited to

an interest in title); *cf. Found. Eng'rs, Inc. v. Superior Court,* 19 Cal.App.4th 104, 23 Cal.Rptr.2d 469, 473 (1993) (describing a test for venue that asks merely whether the claim is for damages as "an oversimplification of the law" and stating that "the test for venue is not simply whether money damages are sought [because] [a]n action may essentially be local although it seeks damages for an injury to real property").

{31} I believe that the general distinction between transitory and local actions in the common law is both logical and practical.[3] The common law local-action

> rule exists for salutory reasons. It prevents courts unfamiliar with local property rights and laws from interfering with the title to real property. Moreover, since such actions often involve the testimony of local witnesses concerning the cause of action and the historical usages of the property, the restricted venue makes it more likely that the action will be tried in a convenient forum with full disclosure of all relevant facts, and notice to all interested parties.

*French v. Clinchfield Coal Co.,* 407 F.Supp. 13, 15 (D.Del.1976). By enacting Section 38–3–1(D)(1), the Legislature recognized that these concerns remain valid in New Mexico, except as applied to trespass actions seeking damages for past conduct. In fact, the common law's concern about convenience is even more meaningful under New Mexico's current venue scheme. We have previously recognized that "New Mexico is one of only a handful of states that has such an expansive venue statute without also having methods by which cases may be transferred based upon the convenience of the parties or in the interests of justice." *First Financial Trust Co. v. Scott,* 1996–NMSC–065, ¶ 18, 122 N.M. 572, 929 P.2d 263. Because convenience is a core function of Section 38–3–1(D)(1) and because of "the absence of a transfer mechanism based upon the convenience of the par-

---

**3.** I disagree with the Court of Appeals' statement that "[t]he common-law treatment of tort actions for injuries to land as local claims appears to have been as much a matter of tradition as of logic." *Cooper,* 2000–NMCA–100, ¶ 12, 129 N.M. 710, 13 P.3d 68. At most, this may be true for trespass claims, as indicated by Chief Justice Marshall's criticism in *Livingston* and by the Legislature's decision to treat trespass as a transitory action, but it is not true of the local action rule in general.

ties," *Scott*, 1996–NMSC–065, ¶ 17, 122 N.M. 572, 929 P.2d 263, I believe that this Court should be cautious in restricting its reach and in expanding the class of transitory actions beyond the intent of the Legislature. *See Casey v. Adams*, 102 U.S. 66, 67–68, 26 L.Ed. 52 (1880) ("The distinction between local and transitory actions is as old as actions themselves, and no one has ever supposed that laws which prescribed generally where one should be sued, included such suits as were local in their character, either by statute or the common law, unless it was expressly so declared.").

{32} "Our primary goal in interpreting a statute is to give effect to the Legislature's intent." *State v. Martinez*, 1998–NMSC– 023, ¶ 8, 126 N.M. 39, 966 P.2d 747. In order to effectuate the intent of the Legislature, I believe that the real question in this case is not whether the sole object of the suit is damages, which, as discussed below, I believe it is not, but instead whether the claim is sufficiently tied to the land in question to warrant local venue based on the purposes of Section 38–3–1(D)(1). From this perspective, there is a significant difference between trespass and nuisance claims for purposes of venue and, therefore, a significant reason for the Legislature to have treated nuisance separately from trespass in Section 38–3–1. *See Clardy*, 460 So.2d at 1275 (distinguishing between a trespass claim and a nuisance claim for purposes of venue and concluding that a claim "for injunctive relief prohibiting the defendants from farming their property so as to damage the land or mineral interests of the plaintiffs" was subject to local action venue requirements); *Town of Hempstead v. City of New York*, 88 Misc.2d 366, 388 N.Y.S.2d 78, 80 (1976) (distinguishing between "a one-time trespass or conversion of timber," for which the application of the local action rule has been appropriately criticized, and a continuous nuisance which affects another's use and enjoyment of land, for which "the venue of the action belongs in the county where the real property is located").

{33} An action for nuisance is highly dependent on community-based interests. "A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." Restatement (Second) of Torts § 821D (1979), *quoted in Scott*, 99 N.M. at 570, 661 P.2d at 62. In order to establish a private nuisance, and unlike an action for trespass, "unreasonableness of the interference is necessary for liability." Restatement (Second) of Torts § 821D cmt. e. "In the nuisance context, an intentional invasion is unreasonable if the gravity of the harm outweighs the utility of the actor's conduct. . . ." *Padilla*, 101 N.M. at 560, 685 P.2d at 968. In this balancing of interests, the particular community in which the nuisance occurs is relevant in three respects. First, the nuisance must "cause[ ] significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." Restatement (Second) of Torts § 821F. "The location, character and habits of the particular community are to be taken into account in determining what is offensive and annoying to a normal individual living in it." *Id.* cmt. e; *accord McCombs v. Joplin 66 Fairgrounds, Inc.*, 925 S.W.2d 946, 950 (Mo.Ct.App.1996) ("If normal persons living in the community would regard the invasion as definitely offensive, seriously annoying or intolerable, it is significant. If normal persons in the locality would not be substantially annoyed or disturbed, the invasion is not significant, even though the idiosyncracies [sic] of the particular plaintiff may make it unendurable to him [or her].") (quoted authority omitted). Second, the gravity of harm analyzes "the suitability of the particular use or enjoyment invaded to the character of the locality." Restatement (Second) of Torts § 827(d). *See generally id.* cmt. g ("Sound public policy demands that the land in each locality be used for purposes suited to the character of that locality and that persons desiring to make a particular use of land should make it in a suitable locality."). Third, the utility of the conduct also takes into account "the suitability of the conduct to the character of the locality." Restatement (Second) of Torts § 828(b); *accord id.* § 831. Thus, considering the importance of local interests and the likelihood that a trial in a nuisance action will hinge on the testimony of local witnesses and involve an examination of the subject property and its past use, there is

a strong justification for characterizing a nuisance action as local for purposes of venue. Moreover, as noted below, a continuing nuisance action, such as Plaintiffs', seeks "protection of the realty" and goes beyond a claim for damages for past conduct. *Jemez Land Co.*, 15 N.M. at 322, 107 P. at 685. *See generally* Restatement (Second) of Torts § 822 cmt. d ("[I]t is unimportant for the purpose of injunction whether the conduct involved is a continuing trespass or a nuisance...."). Based on these considerations, I believe that Plaintiffs' continuing nuisance claim is so significantly founded upon an interest in land, and so locally based, that it falls within the scope of Section 38–3–1(D)(1) and is subject to the venue requirements established by the Legislature in that provision. Venue in the present case is proper only in Lea County.

## II. Plaintiffs' Claim for Continuing Nuisance Adequately Invoked Injunctive Relief

{34} The majority acknowledges that Plaintiffs' complaint included a request "for the injunctive relief set forth above" in the demand for judgment. However, the majority concludes that Plaintiffs' failure to "set forth any injunctive relief" in the body of the complaint restricts the relief sought to money damages and precludes the trial court from awarding injunctive relief. I respectfully disagree with this conclusion on three separate bases: (1) it is inconsistent with the rules of pleading in New Mexico; (2) it overlooks language in the complaint; and (3) it conflicts with the trial court's discretion to award proper relief.

{35} First, Rule 1–008(A) NMRA 2002 merely requires "a demand for judgment for the relief to which [the pleader] deems himself [or herself] entitled" following "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 1–008(A) does not require the pleader to set forth the relief in both the body of the complaint and in the demand for judgment.

[N]otice pleading does not require that every theory be denominated in the pleadings-general allegations of conduct are sufficient, as long as they show that the party

is entitled to relief and the averments are set forth with sufficient detail so that the parties and the court will have a fair idea of the action about which the party is complaining and can see the basis for relief.

*Schmitz v. Smentowski*, 109 N.M. 386, 389–90, 785 P.2d 726, 729–30 (1990). Rule 1–008(A) also does not require that injunctive relief be pleaded with particularity, and Rule 1–008(E) provides that "[n]o technical forms of pleading ... are required." Nevertheless, the logical effect of the majority's interpretation of Plaintiffs' complaint in this case is to require the technical pleading of injunctive relief with particularity. I believe this heightened pleading requirement for injunctive relief is inconsistent with our liberal pleading rules. *See Sanchez v. City of Belen*, 98 N.M. 57, 60, 644 P.2d 1046, 1049 (Ct.App. 1982) ("New Mexico adheres to the broad purpose of the rules of pleading and construes them liberally. The general policy on pleadings require that an adjudication on the merits rather than technicalities of procedures and form shall determine the rights of the litigants.").

{36} Second, I believe that Plaintiffs' complaint gives fair notice to Defendants that injunctive relief is both requested and, assuming the allegations of the complaint to be true, warranted. *See Schmitz*, 109 N.M. at 389, 785 P.2d at 729 ("The theory of pleadings is to give the parties fair notice of the claims and defenses against them, and the grounds upon which they are based."). Plaintiffs alleged that

Defendants are mandatorily required not to conduct their operations in such a manner as to potentially pollute the natural resources including portions of the underlying shallow fresh water aquifer.... It is possible for the Defendants to conduct their day-to-day operations without polluting the environment, and if such pollution occurs, to promptly and properly clean up the pollution before it spreads and restore the property to its uncontaminated condition. The pollution is *abatable and can be cleaned up* in an "economically feasible" manner, taking into consideration the natural resources that have already been pol-

luted and the natural resources that will be polluted if the abatement and clean up are not performed by the Defendants.

(Emphasis added.) Plaintiffs also alleged that "Defendants have caused pollution and contamination, and their subsequent and *continuous* failures to clean up or adequately clean up such pollution and contamination, has permitted and allowed further pollution and contamination to occur. This wrongful conduct has caused and *will cause further additional damage* each day Defendants permit or allow such contamination to persist." (Emphasis added.) Based on these factual allegations, Plaintiffs pursued a count for private nuisance on the basis that

> Defendants owe the Plaintiffs the duty to conduct their operations and maintain their equipment and well materials in such a manner that they do not create and/or maintain a nuisance.... The afore described acts and omissions of the Defendants unreasonably interferes with, and *will continue to unreasonably interfere with,* the use and enjoyment of Plaintiffs' Ranch and the normal and expected use and enjoyment of not only the surface and subsurface soils or strata of Plaintiffs' ranch, but, in addition, the use and enjoyment of portions of the underlying groundwater.

(Emphasis added.) As the majority recognizes, Plaintiffs then requested "injunctive relief" in the demand for judgment.

{37} Even if Plaintiffs were required to plead their request for injunctive relief with particularity, these allegations should suffice. Under Rule 1–008(F), "[a]ll pleadings shall be so construed as to do substantial justice." Plaintiffs' complaint clearly alleged a continuing nuisance and included a statement of facts supporting this claim. In a nuisance action, "[m]onetary damages are inadequate where the harm is continuing in its nature," *Scott v. Jordan,* 99 N.M. 567, 572, 661 P.2d 59, 64 (Ct.App.1983), and "where damages would not provide adequate compensation for the injury, injunctive relief is proper." *Padilla v. Lawrence,* 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct.App.1984). By alleging a continuing nuisance, referring to abatement, and requesting injunctive relief, Plaintiffs'

complaint gave Defendants more than adequate notice of the existence and nature of a claim for equitable relief in the form of abatement or injunction. In other words, in addition to monetary damages, Plaintiffs want Defendants to stop polluting and to clean up the pollution they have allegedly caused. I therefore respectfully disagree with the majority's conclusion that the complaint was limited to monetary damages.

{38} Third, I do not believe that the complaint controls the form of relief available in a continuing nuisance claim. Rule 1–054(C) NMRA 2002 expressly provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Under this rule, "New Mexico now clearly allows any appropriate relief to be granted in a case regardless of what is specifically requested in the pleadings.... Thus the filing of a complaint seeking relief of one sort is not an irrevocable election of remedies precluding the granting of relief of another kind." *State ex rel. Newsome v. Alarid,* 90 N.M. 790, 798–99, 568 P.2d 1236, 1244–45 (1977).

{39} As *Scott* and *Padilla* recognize, injunctive relief is an appropriate remedy for a continuing nuisance. "When an equitable ground exists, courts of equity have power to give relief against either public or private nuisances by compelling the abatement or restraining the continuance of an existing nuisance, or enjoining the commission or establishment of a contemplated nuisance." *Hase v. Summers,* 35 N.M. 274, 275, 295 P. 293, 293 (1930) (quotation marks and quoted authority omitted). Thus, as long as a plaintiff establishes a continuing nuisance "for which there is no adequate and complete remedy at law," *Padilla,* 101 N.M. at 562, 685 P.2d at 970, a trial court has the discretion to award injunctive relief under Rule 1–054(C) regardless of whether the complaint includes injunctive relief in the demand for judgment.

{40} The majority misunderstands my reliance on Rule 1–054(C). I do not contend that a trial court could award injunctive relief *sua sponte, see Scott,* 99 N.M. at 572, 661 P.2d at 64 (noting that injunctive relief is an extraor-

dinary remedy that requires a "showing of irreparable injury for which there is no adequate and complete remedy at law"), or that the "object" of a suit is determined by the relief deemed appropriate by the trial court after a determination of liability. Instead, I rely on Rule 1–054(C) to demonstrate that the "object" of Plaintiffs' claim cannot be determined solely by the demand for judgment in the complaint. Even accepting the majority's restricted reading of the complaint in this case, Plaintiffs would still be able to transform the "object" of their claim by demonstrating at trial that they have suffered an irreparable injury for which there is no adequate remedy at law, thereby invoking the trial court's discretion to award injunctive relief under Rule 1–054(C). For the three reasons articulated above, I believe that Plaintiffs' continuing nuisance claim should be construed as implicating equitable relief in the form of abatement or injunction for purposes of assessing the proper venue under Section 38–3–1.

{41} I conclude that Plaintiffs' nuisance claim has as part of its object an interest in land within the meaning of Section 38–3–1(D)(1), making venue proper only in Lea County. I would therefore affirm the trial court's dismissal of Plaintiffs' complaint for improper venue. The majority holding otherwise, I respectfully dissent.

I CONCUR: JOSEPH F. BACA, Justice.